# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CARLOS J. HERNANDEZ and RYAN A. EVANS, on behalf of themselves and all others similarly situated,

        Plaintiffs,

vs.

PAUL D. GUGLIELMO, d/b/a GUGLIELMO & ASSOCIATES,

        Defendant.

Case No. 2:09-cv-00830-LDG-GWF

**ORDER**

**Motion to Disqualify Mitchell D. Gliner - #52**

This matter is before the Court on Defendant's Motion to Disqualify Mitchell D. Gliner as Counsel for Plaintiffs (#52), filed on May 17, 2011; Plaintiffs' Opposition to Motion to Disqualify (#61), filed on May 31, 2011; and Defendant's Reply in Support of the Motion to Disqualify (#64), filed on June 9, 2011. The Court conducted a hearing in this matter on June 27, 2011.

## **BACKGROUND**

Plaintiffs' Complaint (#1) alleges that Defendant Paul D. Guglielmo d/b/a Guglielmo & Associates violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). Defendant serves as a debt collector. On or about June 11, 2008, Defendant sent two form collection letters to Plaintiff Carlos J. Hernandez regarding amounts he allegedly owed on two Discover Card accounts. *Complaint (#1), Exhibits A* and *B*. On or about August 11, 2008, Defendant sent a form collection letter to Plaintiff Ryan A. Evans regarding $3,611.12 that he allegedly owed on his Discover Card account. *Complaint (#1), Exhibit C*. The form letters contained the following language:

> Unless, within thirty days after receipt of this notice, you dispute the validity of the debt or any portion thereof, we will assume the debt to be valid and will proceed in accordance with that assumption.
>
> If, within thirty days of your receipt of this notice, you notify us that the debt or any portion thereof is disputed, we will obtain a verification of the debt or, if the debt is founded upon a judgment, a copy of the judgment, and we will mail to you a copy of such verification or judgement.

*Exhibits A, B* and *C.*

Plaintiffs allege that Defendant's collection letters violated 15 U.S.C. §1692g(a)(3), (4) and (5) because the letters did not state that the consumer must notify the debt collector *in writing* that the debt is disputed as required by subsection (a)(4) and also did not state that upon the consumer's written request the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor as required by subsection (a)(5). In support of their claims, Plaintiffs rely on cases such as *Bicking v. Law Offices of Rubenstein and Cogan*, 2011 WL 1740156 (E.D.Va. 2011), which hold that a debt collector's failure to include the "in writing" requirement violates subsections (a)(4) and (5) regardless of whether the debt collector would have honored an oral request.

An individual consumer may bring an action against the debt collector for violation of the FDCPA and if successful may recover his or her actual damages, if any, caused by the violation, and statutory damages up to $1,000.00, plus costs of suit and reasonable attorneys fees. 15 U.S.C. §1692k(a)(1),(2)(A) and (3). In the case of a class action, each named plaintiff is entitled to recover his or her actual damages, if any, and the court may award an amount for the other class members not to exceed the lesser of $500,000 or 1 percent of the net worth of the debt collector. §1692k(a)(2)(B). The successful plaintiffs are entitled to recover their costs and reasonable attorneys fees. §1692k(a)(3).

Plaintiffs seek to certify this case as a class action on behalf of Nevada consumers who received the same form collection letter from Defendant. Pursuant to *Order (#45)*, filed on September 24, 2010, the Court will rule on Plaintiffs' motion for class certification, if necessary, after the Court decides the dispositive motions. Both parties filed motions for summary judgment

. . .

on May 31, 2011.  Defendant also filed the instant Motion to Disqualify Plaintiffs' counsel on May 17, 2011.  The following facts pertain to the Motion to Disqualify Mr. Gliner:

On September 19, 2008, Discover Bank, through its counsel Guglielmo & Associates, filed a civil complaint in the Clark County, Nevada Justice Court against Mr. Evans to recover the $3,611.12 allegedly owed on his Discover Card account. *Declaration of Tomio Narita ("Narita Decl.") (#53), Exhibit B.*  Mr. Gliner filed an answer to the complaint on Mr. Evans' behalf on December 3, 2008. *Narita Decl., Exhibit C.*  On or about December 17, 2008, Guglielmo & Associates sent a letter to Mr. Gliner offering to settle Discover Bank's claim against Mr. Evans for $2,500.00. *Narita Decl., Exhibit A, Evans deposition, pp. 35-36.*  Mr. Evans testified that he was not able to pay $2,500 at the time the offer was made.  Nor had he been able to make the payment(s) that Discover Bank had previously demanded of him. *Id., pp. 37-38.*

On March 8, 2009, Mr. Gliner sent a letter to Discover Bank's counsel enclosing a copy of Mr. Evans' opposition to Discover Bank's motion for summary judgment.  Mr. Gliner also enclosed a copy of  "Mr. Evans' FDCPA Complaint against Guglielmo & Associates" which Mr. Gliner stated he would file later that week. The letter stated that "Mr. Evans will resolve his Federal claim for $7,500." *Narita Decl., Exhibit D.*  The draft complaint attached to the letter alleged only a claim by Mr. Evans against Guglielmo & Associates.  It did not contain class action allegations. *Id.*

Mr. Evans and Discover Bank  subsequently agreed to settle the collection action for $3,809.12.  On or about April 27, 2009, Mr. Gliner delivered a check in that amount to Discover Bank's counsel.  The check was drawn on Mr. Gliner's General Business Account and was made payable to the "Roberta J. Ohlinger, Esq. Lawyers Trust Account." *Opposition (#61), Exhibit 2*. (Ms. Ohlinger was a member of the Guglielmo & Associates law firm.)  A stipulation and order for dismissal was signed by the parties' counsel on April 27, 2009. *Narita Decl., Exhibit E.*  Plaintiffs thereafter filed the complaint in this case on May 8, 2009.

Mr. Evans testified at his April 1, 2011 deposition in this case that Mr. Gliner paid the $3,809.12 on his behalf because he was financially challenged at the time.  He stated that he had

partially repaid Mr. Gliner, but he was unable to recall how much he had paid or the dates he made payment. *Narita Decl., Exhibit A, deposition, p. 65*. Mr. Evans indicated that he made cash payments to Mr. Gliner's office and that Mr. Gliner's secretary kept a record of his payments. *Id. pp. 68-69*. As of April 1, 2011, Mr. Evans still owed an unknown amount to Mr. Gliner. When asked when he expected to pay off the full amount, Mr. Evans responded: "As soon as possible." *Id. p. 69*. Mr. Evan testified that there was no written loan agreement and no interest obligation. *Id. pp. 70, 84*. Mr. Evans further testified:

> Q. Is your obligation to repay him tied in any way to the outcome of this lawsuit?
>
> A. No. It's not.
>
> Q. So you feel that you're going to repay him regardless?
>
> A. I don't feel. I know I will.

*Id. p. 70.*

Mr. Evans testified that he understood that if he prevails in this lawsuit, he is eligible to receive up to $1,000 and that he may be eligible for additional payment for his service as class representative. *Id. p. 85*. He stated, however, that there is nothing promised or set in regard to such compensation. *Id. p. 86*. He further testified:

> Q. But if you receive such compensation, do you plan to pay Mr. Gliner back?
>
> A. No. I plan on paying him back way before this will ever be settled.
>
> Q. But I mean, if there was a payment made to you for your class representative service in two months, and you had not yet paid Mr. Gliner back, would you pay him back?
>
> A. In all reality, yes. Yeah.

*Id. p. 86.*

Mr. Evans testified that he considers Mr. Gliner to be a friend. He acknowledged that Mr. Gliner has represented him in several lawsuits besides this case and the Discover Bank collection action. *Id. pp. 19-26*. He testified that Mr. Gliner did not loan him any money in connection with those other lawsuits. *Id. p. 88*. Mr. Evans stated that his father and brother are the only

other persons who have made interest free loans to him. *Id. p. 88.* In a follow-up question, Mr. Gliner noted that these loans were made by Mr. Evans' family members, and he asked Mr. Evans whether he considered Mr. Gliner to be a family member. Mr. Evans responded yes. *Id. p. 90.*

Plaintiffs submitted an affidavit by Mr. Evans in support of their Opposition. *Opposition (#61), Exhibit 1.* Mr. Evans states in this affidavit that the loan from Mr. Gliner was a "*personal loan*." Mr. Gliner told him to pay it back when he could because he knew Mr. Evans was having financial challenges at the time. Mr. Evans states that he paid $2,000 to Mr. Gliner on May 8, 2009 and paid an additional $1,000 on August 11, 2009. *Id.* ¶¶ 7-11. Mr. Evans states that he meant to pay the final $809.12 shortly after his second payment on the loan, but was unable to do so because of his financial situation. He informed Mr. Gliner in April 2011 that he would shortly repay the remaining $809.12. Mr. Gliner, however, refused the final payment and told him it was forgiven. *Id.* ¶¶12-17.

Plaintiffs also attached a memorandum dated May 8, 2009 which was apparently prepared by Mr. Gliner or his office staff and which stated that Mr. Evans paid $2,000 on that date. The memorandum stated that Mr. Evans was to pay an additional $1,000 by the end of May and the final $809.12 by the end of June. *Opposition (#61), Exhibit 3.* Plaintiffs also attached a copy of a $1,000 check from Mr. Evans to Mr. Gliner dated August 11, 2009. *Id. Exhibit 4.* According to Plaintiffs' Opposition, "Evans considers Gliner a 'big brother' and Gliner has happily accepted the role. It is fair to say the relationship is defined by much affection and an abiding hope that Evans greatly succeeds in his life." *Opposition (#61), p. 3.*

## **DISCUSSION**

The Court first addresses the legal standards governing motions to disqualify opposing counsel. In *Rebel Communications, LLC v. Virgin Valley Water District*, 2011 WL 677308 (D.Nev. 2011), this Court quoted *Kelly v. CSE Safeguard Insurance Co.,* 2010 WL 3613872 *1 (D.Nev. 2010) as follows:

> Disqualification motions present courts with a delicate and sometimes difficult balancing task. *Brown v. Eighth Judicial Dist. Court ex rel. County of Clark,* 116 Nev. 1200, 14 P.3d 1266, 1269-70 (Nev.2000). Close cases are resolved in favor of disqualification. *Palmer v. Pioneer Inn Assocs.*, 19 F.Supp.2d

>1157, 1162 (D.Nev.1998) ("Where disqualification is contemplated, 'any doubt is resolved in favor of disqualification.' (citing *Faison v. Thornton,* 863 F.Supp. 1204, 1216 (D.Nev.1993), *overruled on other grounds,* 338 F.3d 981 (9th Cir.2003)). Nevertheless, "[p]articularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is a significant possibility of abuse for tactical advantage. *Optyl Eyewear Fashion Int'l Corp. v. Sytle Cos., Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985) (citations omitted). The moving party bears the burden of establishing an ethical violation or other factual predicate upon which the motion depends. *See United States v. Walker River Irr. Dist.,* 2006 WL 618823 (D.Nev.) (citing *Colyer v. Smith,* 50 F.Supp.2d 966, 967 (C.D.Cal.1999). Attorneys admitted to practice before this court must "adhere to the standards of conduct prescribed by the Model Rules of Professional Conduct as adopted and amended from time to time by the Supreme Court of Nevada, except as such may be modified by this court." Local Rule (LR) IA 10-7(a).

*IN-N-OUT Burger v. In & Out Tire & Auto, Inc.*, 2008 WL 2937294 *3 (D.Nev. 2008), also states that courts must prevent parties from misusing motions for disqualification as instruments of harassment or delay. Disqualification is a drastic measure which courts should hesitate to impose except when absolutely necessary. *Id.* citing *United States v. Titan Pac. Const. Corp.*, 637 F.Supp. 1556, 1562 (W.D. Wash 1986). In *Rebel Communications*, this Court also stated that the court should consider whether the ethical violation can be remedied by some less onerous sanction than disqualification. *Id.* 2011 WL 67708, at *9 citing *Richards v. Holsum Bakery, Inc.*, 2009 WL 3740725, U.S. Dist. LEXIS 109337 (D. Ariz. 2009).

Where the attorney's alleged ethical violation involves a conflict of interest, the general rule is that only current and former clients have standing to seek disqualification. *Sentry Select Ins. Co. v. Meyer*, 2011 WL 1103333, at *7 (D.Nev. March 23, 2011), citing *In re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976). A non-client may have standing to seek disqualification if, but only if, the non-client demonstrates an injury that is (a) concrete and particularized, and (b) actual and imminent, not conjectural or hypothetical. *Sentry*, at *7, citing *Colyer v. Smith*, 50 F.Supp.2d 966, 971 (C.D.Cal. 1999).

**1.  Whether Plaintiffs' Counsel Should Be Disqualified Based on His Violation of Rule 1.8 of the Nevada Rules of Professional Conduct.**

Rule 1.8(e) of the Nevada Rules of Professional Conduct states that a lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation

except that a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter.  A lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.  Rule 1.8(i) states that a lawyer shall not acquire a proprietary interest in the cause of action or subject matter of the litigation the lawyer is conducting for the client, except that the lawyer may acquire a lien authorized by law to secure the lawyer's fee or expenses, and contract with a client for a reasonable contingent fee in a civil case.  Defendant moves to disqualify Mr. Gliner from representing the Plaintiffs in this case based on his having paid the $3,809.12 settlement in the Discover Bank collection action.  Defendant argues that Mr. Gliner's payment of the settlement did not fall within the any of the exceptions to the rule.

      Comment [10] to ABA Model Rule 1.8 states that lawyers "may not subsidize lawsuits ... brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation."  *Oklahoma ex rel. Okla. Bar Ass'n v. Smolen*, 17 P.3d 456, 463 (Okla. 2000), states that the rule is based on the common law prohibitions against champerty and maintenance.  The rule seeks to prevent clients from selecting a lawyer based on improper factors.  The court noted in this regard that unregulated lending to clients will generate unseemly bidding wars for cases.  *Id.* 17 P.3d at 463 n. 36.  The rule also seeks to prevent or reduce the conflict of interest which arises if the party's lawyer is also his creditor.  Although such a conflict exists in regard to an attorney's contingent fee agreement, this is a permitted exception under Rule 1.8(e).  As *Rubio v. BNSF Railway Co.*, 548 F.Supp.2d 1220, 1224-5 (D.N.M. 2008) states, this exception cannot be permitted to swallow the general rule.[1]

---

[1] The Oklahoma court in *Smolen* stated that 29 states, including Nevada, have adopted ABA Model Rule 1.8(e). Fourteen states follow the 1969 ABA Model Code of Professional Responsibility or versions of the Model Rules or Model Code which also prohibit attorneys from making advances to the client for living expenses.  The American Bar Association and the American Law Institute Council ("ALI"), which adopted a similar rule in Section 36 of the Restatement (Third) of Law Governing Lawyers, rejected proposals that would have permitted

The Oklahoma court rejected the argument that Rule 1.8(e) should be interpreted to permit lawyers to make humanitarian loans to their clients after the lawyer has been retained. Such post retention loans arguably reduce the concern that lawyers will offer such advances as inducements to obtain cases. *Smolen* noted that such an exception was rejected by the ALI and ABA, as well as by an overwhelming number of courts. *Id.* 17 P.3d at 462. *See also In re K.A.H.*, 967 P.2d 91, 93 (Alaska 1998) (holding that the rule unambiguously prohibits such advances in either pending or anticipated litigation).

The rationale and policies underlying Rule 1.8(e) and (I) have been heavily criticized. *See* "Broad Prohibition, Thin Rationale: The 'Acquisition of an Interest and Financial Assistance in Litigation' Rules," 16 Geo. J. Legal Ethics 223 (Winter 2003). As *Smolen* and *In re K.A.H.* note, a minority of states permit attorneys to provide financial assistance for their clients' living expenses. Courts also recognize that in making such advances, attorneys may be acting out of humanitarian concerns, rather than for their own economic interests. While these conflicting views regarding the reasonableness of Rule 1.8(e) do not excuse its violation in those jurisdictions which have adopted it, they demonstrate that the prohibited conduct is not universally condemned as unethical.

Disciplinary decisions indicate that only modest sanctions are generally imposed for violating Rule 1.8(e) so long as the violation involves a single or isolated incident and the lawyer did not make the advance in order to obtain the client's representation. In *In re Arensberg, et al.*, 159 A.D.2d 797, 553 N.Y.S.2d 859 (1990), for example, the court censored two attorneys for making loans to clients after they had previously been cautioned about the conduct. The court, however, declined to censure a third attorney who had not previously been cautioned about such loans. In *In re Vrdolyak*, Il. Disp. Op. 98 Ch 17, at *22 (1999), the Illinois disciplinary commission stated that sanctions for advancing funds to clients have generally been

---

attorneys to advance funds for client living expenses. *Id.* 17 P.3d at 458-9, notes 7-12. Eight states, including California, however, explicitly allow lawyers to advance or guarantee loans to clients for living expenses. *Smolen*, 17 P.3d at 459-61.

limited to reprimand or censure. In *Rubenstein v. Statewide Grievance Committee*, 2003 WL 21499265 (Conn.Super. 2003), the court upheld public reprimands against two attorneys who engaged in the business practice of making such loans to their personal injury clients. In *Smolen*, the court imposed a 60-day suspension on the attorney because it was his regular business practice to make such loans to clients and because he had previously been publicly censured for this conduct, but had continued to engage in the practice.

   Cases involving motions to disqualify counsel also indicate that disqualification is not appropriate unless there is evidence of a pattern of such violations, the loan actually impacted the attorney's handling of the case, or other misconduct was present. In *Shade v. Great Lakes Dredge & Dock Co.*, 72 F.Supp.2d 518, 520 (E.D.Pa. 1999), the attorney represented the plaintiff in an action to recover damages for bodily injuries. After an initial jury verdict for plaintiff was reversed on appeal and a new trial was ordered, the attorney provided plaintiff and his family with the free use of an apartment and also paid the family's related expenses. The benefits were initially provided because the plaintiff lost his job. They were continued indefinitely after the plaintiff's wife was injured and the plaintiff suffered an emotional breakdown. The plaintiff and his family were told from the outset that they had no obligation to repay the attorney or his law firm. The court found that the policies underlying Rule 1.8(e) did not require disqualification. There was no genuine conflict of interest between the client and the lawyer because the client was not required to repay the law firm. Thus, the risk that the lawyer would cause an improper settlement to protect the law firm's financial interest was low or non-existent. There also was no evidence that the lawyer or his firm engaged in a practice of offering improper financial incentives to clients to obtain their representation. The court held that the concern for public confidence in the legal system did not outweigh the plaintiff's interest in being represented by the counsel of his choice, particularly in view of the humanitarian circumstances related to the provision of the living expenses.

  In *Waldman v. Waldman*, 499 N.Y.S.2d 184, 185 (1986), the attorney represented the wife in an action to recover spousal and child support. The attorney advanced money to the client to pay her automobile insurance premium and house payment. The appellate court noted

that there was nothing in the record to indicate that the advances were motivated by anything other than the attorney's genuine concern for his client's financial plight. Although the advance violated the New York rule, the court held that it was within the family court judge's discretion to deny the motion to disqualify the attorney on condition that the client reimburse the attorney for monies advanced within 60 days.

In *Rubio v. BNSF Railway Co.*, 548 F.Supp.2d 1220 (D.N.M. 2008), however, the court disqualified plaintiff's counsel based on their violation of Rule 1.8.  The case involved a claim for bodily injury damages.  Prior to the filing of the lawsuit, the attorneys co-signed on an $86,000-plus bank loan for the plaintiff which he would not otherwise have been able to obtain. The plaintiff used the loan proceeds to pay living expenses during the course of the lawsuit. The court stated that "disqualification should be ordered if it will serve the purpose behind the ethical rule in question. [citation omitted] This requires balancing society's interest in ethical conduct, litigants' right to choose their counsel, and the hardship that disqualification would impose on the parties and the entire judicial process." *Id.* at 1223-24.  In granting the motion, the court concluded that "the loan created a conflict of interest that, particularly given the size of the loan, undermines my confidence in the vigor of counsel's representation." *Id.* at 1226. The court noted that the loan may have been a factor in an unsuccessful settlement conference that the court presided over.  The court also cited as a factor in its decision the plaintiff's lack of candor during his deposition regarding the nature of the financial support he received from the attorneys. *Id.*

Mr. Gliner's payment of the settlement in the Discover Bank lawsuit clearly constituted a no-interest loan to Mr. Evans.  Mr. Gliner therefore violated the plain language of Rule 1.8(e) which prohibits an attorney from providing financial assistance to his client in connection with pending litigation.  The violation was not sufficiently egregious, however, to require Mr. Gliner's disqualification in this case.  While the payment may have assisted Mr. Evans, to some extent, in being able to pursue this action, the settlement payment is not itself relevant to the claims or defenses in this case.  Mr. Evans does not claim, for example, that Defendant's alleged violation of the FDCPA affected his liability for the underlying credit card debt.  Nor

does Mr. Evans allege that he suffered any actual damages as a result of Defendant's alleged violation of the FDCPA.

      Mr. Evans repaid most of the loan within a relatively short time after Mr. Gliner paid the underlying settlement. Defendant repaid $2,000 on May 8, 2009 which was the same day that this case was filed, but only 11 days after Mr. Gliner issued the settlement check. Mr. Evans paid another $1,000 on August 11, 2009. The remaining loan balance of $809.12 was still owing at the time of Mr. Evan's deposition on April 1, 2011. Although Mr. Evans testified that he intended repay the remaining balance to Mr. Gliner long before and regardless of the outcome of this case, Mr. Gliner has since waived his obligation to pay the remaining balance. In the Court's view, it would have been preferable for Mr. Evans to have repaid the full amount of the loan as the court in *Waldman v. Waldman, supra*, directed. The fact that Mr. Evans is no longer obligated to reimburse Mr. Gliner for the balance, however, substantially reduces it as a conflict of interest concern. *See Shade v. Great Lakes Dredge & Dock Co., supra.*

      Contrary to Defendant's assertion, there is no evidence that Mr. Evans or Mr. Gliner attempted to conceal the existence of the loan from Defendant or the courts, or that Mr. Evans was less than candid when questioned about the loan during his deposition. Mr. Gliner did not affirmatively disclose to Discover Bank or Defendant that he was advancing the settlement payment from his own funds. The settlement check was drawn on Mr. Gliner's general business account, however, and Defendant might have gleaned from this that Mr. Gliner was the source of the funds. In any event, Mr. Gliner's failure to affirmatively inform Discover Bank or Defendant that he was paying the settlement for Mr. Evans, does not support Defendant's assertion that Mr. Gliner violated Rule 3.3 of the Nevada Rules of Professional Conduct which prohibits a lawyer from knowingly making a false statement of fact or law to a tribunal or failing to correct a false statement of fact previously made by the lawyer to the tribunal. In accusing Mr. Gliner of violating the Rules of Professional Conduct, Defendant's counsel was himself less than accurate in asserting that "Evans plans to repay [the loan] with money recovered in this case." *Motion to Disqualify (#52), p 10.* Mr. Evans, in fact, testified that he intended to repay the loan well before any settlement or recovery in this case and that

payment of the loan was not tied to his recovery.  In this Court's view, an attorney who accuses his adversary of violating the duty of candor to the tribunal should be especially careful to make certain that his own recitation of the facts is accurate and free from exaggeration.

Mr. Evans testified that Mr. Gliner has not advanced monies to him in relation to any other cases in which Mr. Gliner has represented him.  There is no evidence that Mr. Gliner engages in the practice of making such advances or loans to other clients for purposes of obtaining cases or to facilitate the prosecution of cases.  Mr. Gliner's violation of Rule 1.8, therefore, does not rise to the level that would justify his disqualification as counsel for the named Plaintiffs.  Nor does it warrant imposition of any other sanction except to caution Mr. Gliner that such advances or loans violate the prohibition contained in Rule 1.8.

**2.  Whether Mr. Gliner's Relationship With Plaintiff Evans Precludes Him From Serving as Class Counsel In the Event This Case is Certified as a Class Action.**

Defendant also moves to disqualify Mr. Gliner from serving as class counsel in the event this case is certified as a class action.  Defendant's motion in this regard is based on Rule 1.7 of the Nevada Rules of Professional Conduct which prohibits an attorney from representing a client if the representation involves a concurrent conflict of interest.  The rule states that a concurrent conflict of interest exists if the representation of one client will be directly adverse to another client or there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.  Defendant argues that Mr. Gliner's and Mr. Evans' admittedly close personal friendship creates a significant risk that they will favor the interests of each other over the interests of the class members in the litigation.

Defendant relies on the Fifth Circuit's decision in *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102 (5th Cir. 1978), in which one of the named plaintiffs was the wife of a partner in the law firm that was seeking to represent the proposed class.  Another named plaintiff was himself a partner in the law firm representing plaintiffs.  The motion to disqualify was based on Canon 9 of the Florida Code of Professional Responsibility which provides that lawyers should avoid even the appearance of professional impropriety.  The court was "persuaded that attorneys who

are partners or spouses of named plaintiffs, or who themselves are members of the class of plaintiffs should be subject to a per se rule of disqualification under Canon 9 and should not be permitted to serve as counsel for the class." *Id.* 578 F.2d at 104. The court reached this conclusion because of the inherent conflict of interest in the situation. The court stated that an attorney whose fees will depend on the outcome of the case, and who is also a class member or closely related to a class member, cannot serve the interests of the class with the same unswerving devotion as an attorney who has no interest other the representing the class members. The court stated, however, that there was no reason to disqualify plaintiff's counsel from continuing to represent the named plaintiffs if the district court denied class certification.

      Other courts have held that the close relationship between a named plaintiff and the class counsel renders the named plaintiff unsuitable to serve as class representative. In *London v. Wal-mart Stores, Inc.*, 340 F.3d 1246, 254-55 (11th Cir. 2003), the Eleventh Circuit reversed an order certifying a class action based, in part, on its conclusion that the named plaintiff could not adequately serve as class representative because of his close personal and financial ties to plaintiffs' counsel. The plaintiff and the attorney had been close friends since high school. The plaintiff had also previously served as the attorney's stockbroker and there was nothing to prevent him from again doing so in the future. The attorney had also previously represented the plaintiff in a similar lawsuit and had encouraged him to bring the instant suit. The court cited the Seventh Circuit's decision in *Susman v. Lincoln Am. Corp.*, 561 F.2d 86 (7th Cir. 1977), which held that the named plaintiff, whose brother was the class counsel, could not adequately serve as class representative because he might be motivated to maximize the attorney's fees to be awarded to class counsel. The Eleventh Circuit further stated:

> The requirement for a stringent examination of the class representative is especially great when, as in this case, the attorney's fees will "far exceed[]" the class representative's recovery. []. In such circumstances, "courts fear that a class representative who is closely associated with the class attorney [will] allow settlement on terms less favorable to the interests of absent class members."

*London*, 340 F.3d at 1254.

. . .

13

*See also Martz v. PNC Bank, N.A.*, 2007 WL 2343800 (W.D.Pa. 2007) (holding that the named plaintiff would not be an adequate class representative because of his long standing close friendship with class counsel and the uncertainty of whether the plaintiff was actually a member of the proposed class); and *Drimmer v. WD-40 Company*, 343 Fed.Appx. 219, 2009 WL 2519188 (C.A.9 (Cal.)) (affirming district court's order that named plaintiff would not be an adequate class representative based on the combination of his personal relationship and landlord-tenant relationship with class counsel).

Plaintiff Evans and Mr. Gliner have an admittedly close personal friendship that crosses the boundaries of the typical attorney-client relationship. This is evidenced by the fact Mr. Gliner paid the settlement for Mr. Evans in the Discover Bank case and has since forgiven Mr. Evans' obligation on the remaining balance of the no-interest loan. Mr. Gliner has also represented Mr. Evans in several other lawsuits. These circumstances clearly raise substantial doubt as to whether Mr. Evans can be an adequate class representative if Mr. Gliner is class counsel, or, *vice versa*, whether Mr. Gliner can properly serve as class counsel if Mr. Evans is the class representative. This issue, however, is more properly addressed as part of a decision on the motion to certify this case as a class action pursuant to Fed.R.Civ.Pro. 23. If the District Judge concludes that the other requirements for class certification are satisfied, it may be possible for Mr. Gliner to serve as class counsel so long as Mr. Evans is not the class representative. The co-plaintiff, Mr. Hernandez, could conceivably serve in that capacity. It is therefore unnecessary to disqualify Mr. Gliner at this time, although the issue will certainly have to be revisited if this case is certified as a class action and Mr. Evans is permitted to serve as class representative.

## CONCLUSION

For the reasons set forth above, Mr. Gliner's disqualification as counsel for the named Plaintiffs based on his violation of Rule 1.8 of the Nevada Rules of Professional Conduct is not necessary. In the event this case is certified as a class action, however, Mr. Gliner may not be appropriate counsel for the class based on his close personal relationship with Plaintiff Ryan Evans. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Disqualify Mitchell D. Gliner as Counsel for Plaintiffs (#52) is **denied**, without prejudice to renew the motion if and when the motion to certify a class action is at issue before the Court.

DATED this 8th day of July, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge